UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEVONSHIRE REAL ESTATE & ASSET MANAGEMENT, LP, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:12-CV-2199-B |
| AMERICAN INSURANCE COMPANY, | § § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant American Insurance Company's Motion to Compel Completion of Appraisal (doc. 73), filed September 5, 2013. For the reasons that follow, the Motion is hereby **DENIED**.

### I.

### SUMMARY

This case arises out of a dispute over the amount payable on an insurance claim under a commercial property policy. Plaintiff Devonshire Real Estate & Asset Management, LP, (Devonshire) purchased a commercial property insurance policy, No. S 67 MXF 80466440, from Defendant American Insurance Company (American) to cover certain risks for its Burn Brae Apartments property in Irving, Texas (the "Property"). *Id.* ¶ 5. Devonshire alleges that, on May 24, 2011, the Property sustained extensive damage to its roof, chimney, carports, and windows from wind and hail. *Id.* The parties entered into a series of back-and-forth negotiations on the amount of loss on the Property, but after American made a series of payments and Devonshire discovered additional

damages, the parties could not agree on how much American ultimately owed. Doc. 18, Def.'s Mtn. to Compel 2. They specifically disagreed over the amount to be paid for the replacement of certain gutters, downspouts, and carports. *Id.*

On June 6, 2012, Devonshire filed this action against American in state court, alleging claims for breach of contract, breach of the duty of good faith and fair dealing, violations of the Texas Insurance Code, and violations of the Texas Deceptive Trade Practices Act. Doc. 1-5, Pl.'s Orig. Compl. American subsequently removed the case to federal court on July 10, 2012. Doc. 1, Not. of Removal. On December 27, 2012, Defendant filed a Motion to Compel Appraisal and Abate litigation (doc. 18), seeking to compel Plaintiff to participate in the appraisal process to determine the amount of loss on the Property and to abate litigation while appraisal is underway. The Court granted this Motion in part and ordered appraisal on March 26, 2013. Doc. 35. American selected Timothy P. Marshall as its appraiser, and Devonshire selected Jason Lanier to serve as its appraiser. Doc. 36, American's Designation of Experts. On motion, the Court later appointed Bill Weatherford as umpire. Doc. 45.

Lanier and Marshall later inspected the Property and agreed to an Appraisal Award with a replacement cost value (RCV) of $220,725.19, and an actual cash value (ACV) of $198,308.13, for the damaged carports, gutters, and downspouts. Doc. 73-1, Marshall Letter and Appraisal Award Ex. A. The Appraisal Award also included an amount for tax, overhead, and profit, but clarified that the award was "less prior payments." *Id.* The appraisers did not calculate prior payments in the initial Appraisal Award. Instead, Mr. Lanier submitted a letter that was later filed with this Court as a Notice of Appraisal Award (doc. 48-1), which calculated prior amounts paid for the gutters and carports to be $37,357.88 RCV and $47,820.66 RCV respectively. Marshall later submitted a letter

that disputed Lanier's calculations, stating that Lanier forgot to deduct taxes, overhead, and profit. Doc. 73-1, Marshall Letter Ex. B. Although Devonshire filed an objection to Marshall's testimony on August 27, 2013, asserting that his letter was submitted in order to assist in the "low-balling of and partial payment" of the Appraisal Award, Doc. 58, Pl.'s Objection 3, Devonshire later filed a Notice of Supplemental Appraisal Award (doc. 62) on August 29, 2013, which contained a letter from Lanier admitting that he had erroneously excluded taxes, overhead, and profit from his calculations of prior payments and disputing Marshall's calculation as to the appropriate amount of deductions for prior payments. Lanier calculated that prior payments on the gutters and carports should be valued at $47,321.14 RCV and $58,766.75 RCV respectively, and that Devonshire was therefore entitled to an Appraisal Award RCV amount of $114,638.30. Marshall, by contrast, calculated that prior payments on the gutters and carports should be valued at $49,629.21 RCV and $58,766.75 RCV respectively, and that Devonshire was therefore only entitled to an Appraisal Award RCV amount of $112,329.23. Doc. 73-1, Marhsall Letter Ex. B. Even though the disparity between these award amounts is relatively small, the parties disagree about the proper amount of deductions for prior payments and whether the Court can order the appraisers to confer as to the proper amount of prior payments.[1]

## II.

## LEGAL STANDARD

---

[1] The parties have additional disputes that arise out of the Appraisal Award and the appraisers' subsequent letters, but the Court does not need to address them in order to rule on the instant Motion. Specifically, the parties dispute whether any award made to Devonshire during litigation should be paid on a RCV or ACV basis, and whether American is entitled to an offset relating to a prior payment for an ice and water shield made on an RCV basis when the item was never installed. Doc. 85, Joint Status Report 1-2.

As permitted under Texas law, insurance policies typically contain appraisal clauses, which "provide a means to resolve disputes about the amount of loss for a covered claim." *In re Universal Underwriters of Texas Insurance Co.*, 345 S.W.3d 404, 406-07 (Tex. 2011); *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 888 (Tex. 2009). "These clauses are generally enforceable, absent illegality or waiver." *Universal Underwriters*, 345 S.W.3d at 407; *In re Allstate Cnty. Mutual Insurance Co.*, 85 S.W.3d 193, 195 (Tex. 2002). Indeed, courts are discouraged from interfering with the appraisal process when demanded under an insurance policy. *See Universal Underwriters*, 345 S.W.3d at 407 (citing *Johnson*, 290 S.W.3d at 895). Appraisers lack authority to make any determinations as to causation; their function is limited to determining the money value of a loss. *Wells v. American States Preferred Insurance Co.*, 919 S.W.2d 679, 684 (Tex. App.–Dallas 1996, writ denied). "Once it is determined that there is a covered loss and a dispute about the amount of that loss, the appraisal process determines the amount that should be paid because of loss from a covered peril." *Johnson v. State Farm Lloyds*, 204 S.W.3d 897, 903 (Tex. App–Dallas 2006, pet. granted), aff'd, *State Farm Lloyds v. Johnson*, 290 S.W.3d 886 (Tex. 2009).

An appraisal award made pursuant to the terms of an insurance contract is binding and enforceable. *Wells*, 919 S.W.2d at 683. It may only be disregarded for three reasons: (1) when the award was made without authority; (2) when the award was the result of fraud, accident, or mistake; or (3) when the award was not made in substantial compliance with the terms of the contract. *Id.*

### III.

### ANALYSIS

The parties' dispute centers on whether the appraisers fulfilled their duties under the appraisal clause of the insurance contract. American insists that, in order to state the "amount of

loss" as required under the contract, the appraisers must calculate the appropriate amount of deductions to apply to the total loss award and provide the "amount of loss payable." Doc. 73, Def.'s Reply 4. If the appraisers cannot agree as to an amount of net loss, American contends that the dispute should be submitted to the umpire. *Id.* at 5. Devonshire, on the other hand, argues that the appraisers fulfilled their duties when they calculated the total amount of loss to the carports, gutters, and downspouts, and that determining the net loss, or "amount of loss payable," is beyond the scope of their duties under the appraisal clause. Doc. 83, Pl.'s Resp. 3-4. Devonshire further maintains that because the appraisers have fulfilled their duties, the Appraisal Award is complete and binding and therefore should not be disturbed by the Court. *Id.* at 4-5.

In order to determine the proper scope of the appraisers' duties, the Court looks to the language of the insurance contract. A court applies the same general rules of contract construction when interpreting the terms of an insurance contract as it would with other contracts. *Johnson*, 204 S.W.3d at 903. The primary concern is to ascertain the true intent of the parties as expressed in the written contract. *Id.* In order to do so, a court should look at the entire writing to harmonize and give effect to all of its provisions. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). A court must give the words contained in the contract or policy their plain meaning. *National Union Fire Insurance Co. v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008); *Mid-Continent Casualty Co. v. Castagna*, 410 S.W.3d 445, 456 (Tex. App.–Dallas 2013, no pet.). If the instrument is worded so that it can be given a definite meaning, then it is not ambiguous and the court construes it as a matter of law. *Id.*

The insurance contract in this case provides in relevant part:

> If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand. The two

> appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. Each appraiser will state amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding as to the amount of loss.

Doc. 83, Pl.'s Resp. 1; Doc. 18-1, Policy Ex. A, at 141062 10-92. The scope of the appraisers' duties is therefore encapsulated in the phrase "state amount of loss." The contract does not define "amount of loss," however, and no other provision of the contract sheds light on the parties' intent as to the appraisal provision. Nevertheless, the Court finds that the plain meaning of the contract's terms clearly indicates that the appraisers were required to determine loss, not net loss, and that the appraisers were therefore not required to determine the value of prior payments as part of their responsibilities under the insurance contract.

In the insurance context, *loss* is defined as the "amount of financial detriment caused by an insured person's death or an insured property's damage, for which the insurer becomes liable." BLACK'S LAW DICTIONARY 1030 (9th ed. 2009). *Amount* is defined as "the total number or quantity." WEBSTER'S NEW COLLEGIATE DICTIONARY 39 (1976). Thus, the plain meaning of the contract's terms required the appraisers to ascertain a total sum of financial detriment caused to the property, and nothing else. The appraisers accomplished this task when they calculated the total financial detriment that Devonshire suffered and which American was initially liable for. American's later payments only had the effect of mitigating its own liability, not decreasing the loss that Devonshire suffered as a consequence of the property damages and that the appraisers were entrusted with calculating.

American's insistence that the appraisers must also determine the value of the prior payments, and therefore the "amount of loss payable," would expand the duties of the appraisers

beyond those required in the contract. Doc. 73, Def.'s Br. 4. It would have them determine not just loss, but also the financial benefits that Devonshire had already received from American as well as Devonshire's adjusted rights of recovery. While these calculations may be closely related to the appraisers' duties under the contract, they still do not fall within the ambit of the appraisers' duties as established by the language of the contract.

The parties' conflicting interpretations of the appraisers' duties does not make the appraisal clause ambiguous. As noted above, the meaning of the appraisal clause's terms is clear from the face of the contract, and thus the contract is not patently ambiguous. *National Union Fire Insurance Co. v. CBI Industries, Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) ("A patent ambiguity is evident on the face of a contract."). The appraisal clause is also not latently ambiguous because its terms remain clear even when applied to the specific circumstances here. *Id.* ("A latent ambiguity arises when a contract which is unambiguous on its face is applied to the subject matter with which it deals and an ambiguity appears by reason of some collateral matter."). Although American may argue that the phrase "amount of loss" is latently ambiguous because of American's prior payments, most Texas cases in which courts have found a latent ambiguity are distinguishable because they involved contract terms that failed to specify how the respective parties should discharge their obligations once circumstances arose that were not envisioned in the contract's language. *See, e.g.*, *Zeolla v. Zeolla*, 15 S.W.3d 239, 242 (Tex. App.–Houston 2000, pet. denied) (finding an agreement latently ambiguous that required a man to pay his former wife retirement benefits "if retirement occurred at 65," because it did not specify what his obligations were when he retired at 57); *Coker*, 650 S.W.2d at 394-95 (finding an agreement that obligated a husband to pay his former wife $25,000 on a debt owed him ambiguous because it did not indicate whether the husband was obligated to make the

payments after the debtor defaulted and no longer made payments on the loan). Here, the contract unambiguously states that the appraisers could discharge their duties by calculating the loss to the property, regardless of the circumstances. The fact that American had made prior payments that could offset the loss amount only presented a question of whether the appraisers should take the *additional* step of calculating the value of the offsets and thus the net loss, an undertaking which is not envisioned in the contract. The Court recognizes that it must construe an ambiguous insurance policy in favor of an insured, *National American Insurance Co. v. Breaux*, 368 F. Supp. 2d 604, 611 (E.D. Tex. 2005), but it is also equally aware that conflicting interpretations and expectations of a policy are insufficient to create an ambiguity. *Forbau v. Aetna Life Insurance Co.*, 876 S.W.2d 132, 135 (Tex. 1994). The Court finds that the language of the contract is sufficiently clear and unambiguous, and that the appraisers completed their responsibilities under the contract when they calculated the loss to the Property without determining the value of the prior payments.[2]

Finally, American argues that the purpose of an appraisal clause is to provide a binding, extra-judicial remedy for disagreements as to the amount of loss. *Breshears v. State Farm Lloyds*, 155 S.W.3d

---

[2] American cites letters that Marshall and Lanier wrote after the Appraisal Award was submitted to show that the appraisers calculated the prior payments as part of their duties and that they disagreed over the proper valuation of these payments. *See* Docs 48-1, Lanier Letter; 62-1, Lanier Letter; 73-1, Marshall Letters Exs. A-B. American argues that the fact that Devonshire submitted these letters as Notices of Appraisal Award shows that Devonshire was trying to unilaterally adjust the original Appraisal Award submitted by the appraisers. Doc. 86, Def.'s Reply 4. While these letters may suggest that the appraisers understood the contract to require them to evaluate the prior payments made by American, the Court will not consider them as evidence of the contract's meaning because the contract is otherwise unambiguous. *Tremont LLC v. Halliburton Energy Services, Inc.*, 696 F. Supp. 2d 741, 849 (S.D. Tex. 2010) ("Extrinsic evidence of subsequent conduct to determine the meaning of a contract generally cannot be considered in the absence of an ambiguity."); *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 732 (Tex. 1981) (refusing to consider evidence of subsequent conduct to discern the meaning of an otherwise unambiguous contract). That is not to say that the Court takes Devonshire's Notices as binding amendments to the Appraisal Award. Docs. 48, Notice; 62, Notice. Rather, the only binding Appraisal Award is the one signed and submitted by both appraisers to show their calculation of the loss to the Property. Doc. 73-1. Appraisal Award Ex. A.

Case 3:12-cv-02199-B Document 92 Filed 12/26/13 Page 9 of 10 PageID 929

340, 344 (Tex. App.–Corpus Christi 2004, pet. denied). An appraisal decision is "intended to estop one party from contesting the issue of the value of damages in a suit on an insurance contract." *Breshears*, 155 S.W.3d at 343. The import of these holdings is that under the present circumstances appraisers would normally determine the amount of loss payable so as to resolve any disputes as to damages. Indeed, it would likely be more efficient for the appraisers here to agree to the amount of prior payments, given that the parties agree that certain prior payments should be deducted and only dispute the value of these prior payments. Doc. 86, Def.'s Reply 1. Yet the contract's language only vests the appraisers with the responsibility of stating the "amount of loss," and the appraisers accomplished this once they determined the total financial detriment that Devonshire suffered and submitted their Appraisal Award. This Appraisal Award is therefore binding, and no exception applies that would permit the Court to overturn it. *Wells*, 919 S.W.2d at 683.[3]

## IV.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** American's Motion to Compel Completion of Appraisal (doc. 73). The Court is careful to note, however, the limits of its holding. In denying American's Motion, the Court is only concluding that the appraisers completed their duties under the contract and formed a binding Appraisal Award when they calculated the total loss, and that they were not obligated to calculate the amount of prior payments as to the gutters and carports.

---

[3]Cases that American cites to, like *Woodward v. Liberty Mutual Insurance Company, et al.*, No. 3:09-cv-0228-G, 2010 WL 1186323, at *3 (N.D. Tex. Mar. 26, 2010), are inapposite because in that case the appraisers did not jointly agree to the Appraisal Award and therefore needed to be compelled to complete appraisal in order to comply with the terms of the disputed insurance contract. Here, the appraisers jointly agreed to the Appraisal Award and completed their duties under the contract, so the Court has no authority to compel them to perform any additional acts.

Doc. 86, Def.'s Reply 1; 62-1, Lanier Letter; 73-1, Marshall Letter Ex. B. The Court does not resolve any of the other questions presented in the parties' Joint Status Report (doc. 85), and does not reach any other conclusions as to the scope of coverage under the contract.

Pursuant to this Court's Order Vacating Trial Date (doc. 84), the parties have also briefed other issues presented in their Joint Status Report. Now, the Court **ORDERS** the parties to file Cross Motions for Summary Judgment, with accompanying briefs, consolidating their briefing on the issues contained in the Joint Status Report and addressing any other issues which the Court should properly consider at the summary judgment stage. The parties' Motions are due **no later than FRIDAY, JANUARY 27, 2014**. Once the Court has had the opportunity to consider the parties' Motions, it will set another trial date in order to resolve those issues not decided on summary judgment.

**SO ORDERED.**

**SIGNED: December 26, 2013.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE